UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUAN B. THOMAS,

        Plaintiff/Counter-Defendant,

                                    Civil Case No. 14-11441
v.                                    Honorable Linda V. Parker

ARMED FORCES INSURANCE
EXCHANGE,

        Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this lawsuit removed from state court on the basis of diversity jurisdiction, Dequan B. Thomas ("Thomas") seeks coverage under a homeowner's insurance policy issued by Armed Forces Insurance Exchange ("AFI"), Policy Number 0694605E-A ("Policy"), for damages arising from a fire at 14845 St. Mary's, Detroit, Michigan.  Thomas alleges three counts in his Complaint against AFI: (1) breach of contract; (2) "appraisal proceedings and appointment of an umpire"; and (3) violation of the Michigan Uniform Trade Practices Act, Michigan Compiled Laws §§ 500.2001-500.2050.  Claiming that the Policy is void ab initio and seeking to recoup benefits it already paid Thomas under the Policy, AFI filed a Counter-Complaint asserting the following claims against Thomas: (1)

concealment or fraud; (2) reimbursement and recoupment; (3) unjust enrichment; and (4) declaratory judgment.

Presently before the Court is AFI's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on January 23, 2015.  (ECF No. 15.)  Thomas filed a response to the motion on February 4, 2015.  (ECF No. 19.) AFI filed a reply brief on February 18, 2015.  (ECF No. 22.)  The Court heard oral argument with respect to AFI's motion on April 15, 2015.  For the reasons that follow, the Court now grants Defendants' motion.

## I.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.    Factual and Procedural Background

Thomas owns a home located at 14845 St. Mary's, Detroit, Michigan ("Property"). He lived there for a while but then began renting the home to Tanisha Hallman ("Hallman") and her family. On November 25, 2013, while Hallman occupied the Property, there was a first-floor kitchen fire which caused

3

substantial damage.  (Def.'s Mot., Ex. C; Ex. D at Dep. Exs. 3-6.)  The Detroit Fire

Department was called to the scene and extinguished the fire.  (*Id.*, Ex. C.)

The following day, November 26, 2013, Thomas contacted AFI by

telephone to obtain homeowner's insurance coverage for the Property.  (*See* Def.'s

Mot., Ex. A.)  Thomas purportedly had homeowner's coverage through another

insurer which he had let lapse at the end of July 2013.  (*Id.*, Ex. D at 98-99.)  An

application for coverage was completed over the phone by an AFI representative.

(*Id.*, Ex. A.)  During the telephone interview, Thomas represented that there had

been no losses at the Property in the past five years and that the Property needed no

repairs or improvements.  (*Id.*)  AFI issued the Policy.  (*See id.*, Ex. B.)

A few days later, on December 2, 2013, there was a second fire at the

Property which originated in an upstairs porch above the back door.  (Def.'s Mot.,

Ex. C.)  Thomas immediately reported this fire to AFI and claimed all the damage

caused by both fires.  He hired an insurance adjuster, Angelie Gilmore at

Advanced Claims Adjusting Inc., to prepare his claim.  (*See id.*, Exs. F, G.)

Thomas did not tell Gilmore about the fire on November 26.  (*See id.*, Ex. E at 88.)

He told Gilmore that all of the damage to the house and its contents were caused

by the December 2 fire and she prepared an estimate for the damage.  (*Id.* at 92-93;

Ex. F.)  This estimate included in excess of $22,000.00 in damage to the kitchen,

alone.  (Def.'s Mot., Ex. F.)  Thomas also prepared a list of contents that he

4

claimed were damaged in the December fire, which included the kitchen appliances, cookware, dishware, and eating utensils.  (*See id*., Ex. D at 110; Ex. G.)

AFI retained Herndon Investigations to conduct an investigation into Thomas' claim, which uncovered the November 25 fire at the Property.  (*Id*., Ex. C.)  AFI requested an examination under oath ("EUO").

Thomas retained a lawyer and appeared at the EUO on January 23, 2014. (Def.'s Mot., Ex. D)  During his testimony, Thomas asserted that there had been only one fire at the house, on December 2, 2013.  (*Id*. at 113.)  Thomas brought a copy of the fire department's report concerning the fire and was asked and answered the following questions:

> Q.   What is Exhibit 20?
>
> A.   This is the fire report.
>
> Q.   That's for the December 2nd fire that bring us here today?
>
> A.   Yes, sir.
>
> Q.   Where did you get that?
>
> A.   I actually went downtown to the fire marshal and picked it up.
>
> Q.   And am I correct that this is the one and only fire report pertaining to any fires at St. Mary's?
>
> A.   Yes, sir.
>
> Q.   There weren't any other fires at St. Mary's during your ownership of the house, were there?

5

A.      No, sir.

(*Id*.)  When asked if the tenant, Hallman, had told him about any fires at the house

during her tenancy, Thomas answered: "No."  (*Id*. at 133.)  Thomas denied having

any knowledge of any fires at the house while Hallman was a tenant.  (*Id*.)  He

insisted that the one and only fire at the house was the December 2, 2013 fire for

which he was seeking coverage.  (*Id*.)

During the EUO, Thomas also testified that he had been living at the

Property since about November 19, 2013, although he quickly adjusted that date to

November 27 or 28, 2013.  (*Id*. at 52-54.).  He further testified that everything

inside the house, including the kitchen, was working normally and that there was

no property damage prior to the December 2 fire.  (*Id*. at 93, 103, 111, 120, 131.)

According to Thomas, the house was in great condition.  (*Id*. at 103.)

Shortly after the EUO, AFI's attorney sent Thomas' attorney a copy of the

November 25 fire report.  Apparently, AFI also communicated to Thomas that it

was rescinding the Policy and denying coverage based on his misrepresentations in

the application for insurance and at his EUO.  On March 19, 2014, Thomas

initiated this lawsuit by filing his Complaint in the Circuit Court for Wayne

County, Michigan.  AFI removed Thomas' Complaint to federal court on April 9,

2014.  (ECF No. 1.)  AFI deposed Thomas during discovery in this matter on

December 10, 2014.  (Def.'s Mot., Ex. E.)

6

During his deposition, Thomas admitted that he knew about the November

25 fire no later than November 28 and before the December 2 fire.[1]  (*Id*. at 84, 89.)

In fact, Thomas testified that he had requested a fire report from the City of Detroit

for the November fire a day or two after the fire and before the fire on December 2.

(*Id*. at 84-86.)  Thus, according to Thomas' deposition testimony, he knew about

the November fire and had requested a report concerning the fire before the EUO.

When asked why he gave contrary information at his EUO, Thomas simply

claimed that he was "going through a lot" and had "a lot of stuff on [his] mind."

(*See, e.g., id*. at 5, 8, 37, 39, 43.)  At the EUO, Thomas indicated that he

understood the questions asked by AFI's counsel (Def.'s Mot., Ex. D at 134); and

at his subsequent deposition, he testified that he does not have any mental

---

[1] In an e-mail sent to his attorney on January 25, 2014, Thomas stated that he learned about the November 25, 2013 fire the evening of November 26, 2013, when he got a call from a company seeking to do the repair work at the house. (Def.'s Mot., Ex. E at Dep. Ex. 1.)  He claimed that he was unaware of the fire when he applied for the Policy, however.  (*Id*.)  When confronted with the e-mail at his deposition, Thomas claimed that when he wrote the e-mail, he was confused and that he in fact did not learn about the November fire until Hallman flagged him down at a gas station, which he claimed was days after the fire.  (Def.'s Mot., Ex. E at 66.)  Thomas' account of when he learned about the first fire changes yet again in his brief submitted in response to AFI's motion, where Thomas asserts that "[h]e did not learn about the two fires until confronted by Defendant's attorney in the course of litigation with a fire report regarding the November 25, 2013 fire that occurred at 11:38 AM."  (Pl.'s Resp. Br. ¶ 5.)  Thomas does not cite any evidence in support of this assertion.  However, in an affidavit submitted in support of his response brief, Thomas states that he "did not learn that the fire damages in [his] home were caused by two fires until after the claim had been presented."  (*Id*., Ex. 1 ¶ 2.)  The value of this statement will be addressed *infra*.

problems, does not take drugs, had not taken any medications or consumed alcohol on the date of the EUO. (*Id.*, Ex. E at 107-08.)

During his deposition, Thomas indicated that he was no longer seeking coverage for the damage caused by the November fire. (*Id.* at 93.) He testified that he reached out to Angelie Gilmore to prepare an estimate of the damage caused only by the December fire, but had not heard back from her. (*Id.* at 93-94.)

As indicated, AFI filed a Counter-Complaint against Thomas. When Thomas failed to file a timely responsive pleading to the Counter-Complaint, AFI requested a Clerk's Entry of Default, which was entered January 26, 2015. (ECF No. 16.) On February 4, 2015, Thomas filed an Answer to the Counter-Complaint and moved to set aside the default. (ECF Nos. 17, 18.) The Court set aside the default the following day. (ECF No. 20.)

## III.   Applicable Law and Analysis

AFI argues that Thomas' claims fail because it rightfully voided the Policy under the terms of the Policy and Michigan law due to Thomas' false statements when applying for the policy and during his EUO. Alternatively, AFI argues that Plaintiff's claims must be dismissed because he never submitted a proof of loss for the damage caused by only the December 2 fire, which is a condition precedent to coverage. (*See* Def.'s Mot., Ex. B § 1.)

The Policy at issue in this lawsuit contains the following provision:

8

**2.      Concealment or Fraud**.  The **entire policy** will be **voided** if, whether before or after a loss, an "insured" has:

a.      Intentionally concealed or misrepresented any material fact or circumstances;

b.      Engaged in fraudulent conduct; or

c.      **Made false statements**;

**relating to this insurance**.

(Def.'s Mot., Ex. B at Pg ID 134, emphasis added.)  The Michigan Supreme Court has provided the following summary with respect to the interpretation of an insurance contract:

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Eghotz v. Creech*, 365 Mich. 527, 530, 113 N.W.2d 815 (1962). Accordingly, the court must look at the contract as a whole and give meaning to all terms. *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 694, 327 N.W.2d 286 (1982). Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 412 Mich. 355, 361-362, 314 N.W.2d 440 (1982). This Court cannot create ambiguity where none exists. *Edgar's Warehouse, Inc. v. United States Fidelity & Guaranty Co.*, 375 Mich. 598, 602, 134 N.W.2d 746 (1965).
>
> Exclusionary clauses in insurance policies are strictly construed in favor of the insured. *Shelby Mut. Ins. Co. v. United States Fire Ins. Co.*, 12 Mich. App. 145, 149, 162 N.W.2d 676 (1968). However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. *Fresard*, supra, 414 Mich. at 695, 327 N.W.2d 286. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it

did not assume. *Kaczmarck v. La Perriere*, 337 Mich. 500, 506, 60
N.W.2d 327 (1953).

*Auto Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433-34 (Mich. 1992).

Applying these principles to the Policy, the entire policy is void if Thomas "[m]ade

false statements . . . relating to [the] insurance", "before or after a loss[.]"

When he applied for coverage on November 26, 2013, Thomas informed

Defendant's representative that there had been no losses at the Property in the past

five years and that the Property needed no repairs or improvements.  These

statements were false, as in fact a fire had occurred at the Property the day before

which caused substantial damage.  In an affidavit submitted in support of his

response brief, Thomas states that "[he] called at 11 AM on November 25, 2013 to

obtain insurance coverage as [he] was about to evict the tenants and move into the

home."  (Pl.'s Resp., Ex. 1 ¶ 9.)  According to the fire incident report, the time of

the alarm for the fire on that date was 11:38 a.m.  (*See* Def.'s Mot., Ex. C.)

Presumably, Thomas is trying to suggest that the fire had not occurred when he

made the above statements.

First, Thomas' statement in his affidavit does not contradict AFI's evidence

(*see* Def.'s Mot. Ex. B, Ex. H ¶¶ 2, 3), indicating that he was interviewed for

insurance coverage on November 26, 2013, after the fire occurred, and therefore

the statements were false when made.  Second, Thomas testified during the EUO

that he applied for coverage online on November 26 *and then* spoke by telephone

10

to an AFI representative, at which time he gave the information which AFI now claims was false.  (*See id.*, Ex. D at 99-100, 104.)  At his deposition, Thomas again testified that he applied for coverage on November 26, 2013.  (*Id.*, Ex. E at 70.) Thus the assertion in Thomas' affidavit as to when he applied for insurance is contrary to his EUO and deposition testimony.

" 'A party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.' "  *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907-08 (6th Cir. 2006) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). In *Aerel*, the Sixth Circuit advised that "[a] directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."  *Id*. at 908.  Thomas has never offered a persuasive justification for the contradiction.  Moreover, these are not the only false statements that AFI has demonstrated Thomas made.

Thomas submitted a coverage claim for loss which he professed was incurred in a single fire on December 2, 2013.  He also testified during the EUO that there was no damage to the Property before the December 2 fire and that all of the damage resulted from that fire.  The undisputed evidence establishes that

11

Thomas knew about the earlier November 25, 2013 fire and the damage to the Property resulting from that fire when he made these statements. Thomas again attempts to use the affidavit attached to his response brief to contradict this evidence.

There, Thomas states that he "did not learn that the fire damages in my home were caused by two fires until after the claim had been presented." (Pl.'s Resp., Ex. 1 ¶ 2.) This statement, however, is contrary to Thomas' deposition testimony and many of his other past statements. Thomas has never offered a persuasive justification for the various versions of the events that he has told. Thus the Court is striking the assertions in his affidavit.

Based on the undisputed facts, there can be no question that Thomas made false statements when he applied for coverage and during the claims process. In other words, "before [and] after a loss[,]", Thomas (the insured), "made false statements . . . relating to this insurance." (Def.'s Mot., Ex. B at Pg ID 134.) Under the express terms of the Policy, AFI therefore can void "[t]he entire policy[.]" (*Id.*) Thomas contends, however, that he "had no intent to defraud at any stage of the insurance procurement or claims processes." (Pl.'s Resp. Br. at Pg ID 325.) But effective with the repeal of former Michigan Compiled Laws Section 500.2832, the insured's intent is no longer relevant when the insurer seeks to void a policy based on a false statement where the policy contains the language at issue

12

here.  *See Martin v. Farm Bureau Gen. Ins. Co. of Mich.*, No. 275261, 2008 WL

1807940, at *6 (Mich. Ct. App. Apr. 22, 2008); *Williams v. Am. W. Home Ins. Co.*,

No. 1101963, 2012 WL 479992, at *4 (E.D. Mich. Feb. 14, 2012).

As the court explained in *Martin*, cases previously requiring proof of the

insured's intent to deceive the insurer involved policies governed by former

Michigan Compiled Laws Section 500.2832.  *Martin*, 2008 WL 1807940, at *5-6

(citing *Rayis v. Shelby Mut. Ins. Co. of Shelby, Ohio*, 264 N.W.2d 5, 8 (Mich. Ct.

App. 1978) and *West v. Farm Bureau Ins. Co. of Mich.*, 234 N.W.2d 485, 487

(Mich. Ct. App. 1975)).  Section 500.2832 contained a provision stating:

> This entire policy shall be void if, whether before or after a loss, the
> insured has willfully concealed or misrepresented any material fact or
> circumstance concerning this insurance or the subject thereof, or the
> interest of the insured therein, or in case of any fraud or false swearing
> by the insured relating thereto.

Mich. Comp. Laws § 500.2832.  Section 500.2832 was repealed effective January

1, 1992.  *Id.*  As the *Martin* court explained, fire insurance policies are now

governed by Michigan Compiled Laws Section 400.2833, "which requires fire

insurance policies to contain a provision stating that the policy may be void on the

basis of misrepresentation, fraud or concealment."  2008 WL 1807940, at *6

(citing Mich. Comp. Laws § 400.2833).  As the *Martin* court further explained,

"[b]ecause the willful and material language [contained in section 500.2832] is no

longer present in the statute, and the policy language does not require the insured

13

to have intentionally committed fraud or false swearing about material facts or circumstances," an insurer does not have to prove intent and materiality. *Id.* (finding that the trial court's instruction which did not require the insurer to prove intent or materiality "was in accord with applicable law"); *see also Williams*, 2012 WL 479992, at *4 (same). But even if Thomas' intent was relevant, the Court still would find that AFI has demonstrated its entitlement to summary judgment.

Generally, "[t]he intent with which a false representation is made and the existence of fraud is . . . a question of fact to be decided by the jury in view of all the circumstances." *Trice v. Commercial Union Assurance Co.*, 334 F.2d 673, 677 (6th Cir. 1964) (citations omitted). "However, where reasonable minds cannot differ as to the reason why the insured made material misrepresentations, the issue of intent is decided by the court as a matter of law." *7 Mile & Keystone, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 11-12930, 2013 WL 1629209, at *6 (E.D. Mich. April 16, 2013) (citing *Flowers v. IDS Prop. Cas. Ins. Co.*, No. 10-15164, 2012 WL 506728, at *7 (E.D. Mich. Nov. 26, 2012)); *see also Manzie v. Nationwide Prop. and Cas. Ins. Co.*, No. 12-12911, 2013 WL 4414794, at *8 (E.D. Mich. Aug. 14, 2013) (same). Stated differently, "even where state of mind is at issue, 'summary judgment is appropriate if all reasonable inferences defeat the claims on one side.' " *Bond v. U.S. Mfg. Corp.*, No. 09-11699, 2010 WL 3037942,

14

at *4 (E.D. Mich. July 30, 2010) (quoting *In re* Beckham, No. 08-8054, 2009 WL 1726526, at *6 (BAP 6th Cir. 2009)).

This is one of those instances where reasonable minds could not differ as to why Thomas made material misrepresentations in his claim submission and during his EUO. At the EUO, Thomas was repeatedly asked about the condition of the Property prior to the December 2 fire and whether this was the only fire at the Property. He repeatedly indicated that the Property was in good condition, with no damage, prior to December 2, and that this was the only fire at the Property of which he was aware. When AFI confronted Thomas about the November 25 kitchen fire at his subsequent deposition, he had no reasonable explanation for why he failed to provide truthful answers earlier. The fact that Thomas is now withdrawing his claim for damage related to the first fire (*see* Pl.'s Resp., Ex. 1 ¶ 6) does not change the fact that he made false statements entitling AFI to void the Policy. It appears that Thomas modified his claim in this litigation only because he got caught in his lies.

Notably, this is not a case where the material misrepresentations by the insured relate to the value, description, or existence of property claimed to be damaged. *See, e.g., Trice*, 334 F.2d at 676-77 (finding jury question where insured's "error or misstatement . . . in the proof of loss" related to the dimensions of certain grain storage bins damaged in a fire. "The proof of loss stated that

15

certain bins involved in the fire had overall dimensions of 20' x 52' x 30', when in fact that bins measured 16' x 30' x 17.5'."); *Rayis*, 264 N.W.2d at 8 (finding that the plaintiff's claim for $60,000 based on damage to equipment and inventory and an appraiser's value at $11,800 created a jury question); *Beard v. Allstate Indem. Co.*, No. 09-14644, 2011 WL 3330567, at *3 (E.D. Mich. Aug. 03, 2011) (finding jury question where the insured's estimate of damages and repairs for her property was far greater than the insurer's estimate).  In those instances, it is plausible that the insured simply made an "honest mistake."  It is inconceivable, however, that an insured could forget that there had been a fire at his or her property, which caused significant damage, when asked about it only a few months after its occurrence.

Finally, as set forth in AFI's Counter-Complaint (*see* ECF No. 2), this was not the only misstatement made by Thomas during the EUO and his deposition.  A review of the relevant transcripts reveals that this insured made so many misrepresentations during the investigation of his claim and this litigation that he has been unable to keep straight what he has told AFI's investigator and attorney or even his own attorney.

In short, the undisputed evidence establishes that AFI is entitled to void the Policy based on Thomas' false statements.  As such, Thomas is not entitled to relief on his breach of contract claim against AFI.  His remaining claims therefore also fail on the merits.  He is not entitled to appraisal proceedings or the

16

appointment of an umpire and AFI cannot be said to have violated the Michigan

Trade Practices Act by failing to pay Thomas' claim within sixty (60) days of

submitting his proof of loss.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Summary Judgment is

**GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 4, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, May 4, 2015, by electronic and/or U.S.
First Class mail.

s/ Richard Loury
Case Manager

17